IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No.  12-cv-00551-PAB-MEH

DAVID A. BOVINO P.C., d/b/a Law Offices of Bovino & Associates, a
Colorado corporation, and
DAVID A. BOVINO, an individual,

      Plaintiffs,

v.

PATRICIA A. MACMILLAN, an individual, and
CHRISTINA MACMILLAN, an individual,

      Defendants.

---

**ORDER**

---

This matter is before the Court on Plaintiffs' Motion for Summary Judgment
[Docket No. 45] filed by plaintiffs David A. Bovino P.C. d/b/a Law Officers of Bovino &
Associates and David A. Bovino.  This Court has subject matter jurisdiction pursuant to
28 U.S.C. § 1331 and § 1367.

**I.  BACKGROUND**[1]

John H. MacMillan III was a descendant of the founder of Cargill Inc., a United
States-based food and manufacturing company.  Docket No. 23 at 3, ¶ 9.  John
MacMillan III married Patricia MacMillan and the couple had a son, Andrew Cargill
MacMillan ("Mr. MacMillan").  *Id.*  John MacMillan III and Patricia MacMillan divorced
and John MacMillan III died, leaving Mr. MacMillan as a beneficiary of a trust of

---

[1]The following facts are undisputed unless otherwise indicated.

significant value.  *Id.* at 1, 3, ¶¶ 9-10.  The trust was administered by UBS Trust

Company N.A. ("UBS").  *Id.* at 3, ¶ 10.  Mr. MacMillan married Christina MacMillan

("Mrs. MacMillan") and the couple had a son.  Docket No. 23 at 4, ¶ 15.

Beginning in 2008, plaintiff David A. Bovino served as legal counsel to Mr.

MacMillan.  Docket No. 45-1 at 1, ¶ 5.  In 2010 and 2011, Mr. Bovino was retained to

assist in the transfer of trust assets from UBS to a different institutional trustee.  Docket

No. 45 at 3, ¶ 1.[2]  Mr. Bovino and Mr. MacMillan also discussed "concerns over

continuing [his] marriage" to Mrs. MacMillan.  Docket No. 45-3 at 1.  Mr. Bovino and Mr.

MacMillan often communicated by email, through Mr. MacMillan's AOL account and Mr.

Bovino's email account with the domain name bovinolaw.com.  Docket No. 45 at 6,

¶ 14; *see, e.g.*, Docket No. 45-4.

For the purposes of their motion, plaintiffs admit that Mrs. MacMillan had

permission to access Mr. MacMillan's account.  Docket No. 45 at 10 n.2.  However, the

scope of that permission is in dispute.  Mrs. MacMillan testified that Mr. MacMillan gave

her access to his email by entering his email password into her computer.  Docket No.

45-2 at 9, p. 19:5-7; *id.* 15, p. 27:14-19.  She testified that "Andrew knew I could see his

e-mails too.  He was fully aware of that."  *Id.* at 4, p. 12:3-4.  However, Mrs. MacMillan

---

[2]The Court's Practice Standards require any party opposing a motion for summary judgment to "admit or deny the asserted material facts set forth by the movant."  Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3.b.iv.  Legal arguments, such as relevance and materiality, as to an established fact "should be expressed in the part of the brief devoted to legal argument, and the fact should be admitted."  Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3.b.vii.  Defendant's brief in opposition responds by asserting that several specific facts are "Irrelevant and immaterial."  Docket No. 65 at 3.  Thus, in resolving the instant motion, the Court will consider admitted any alleged facts defendant characterizes as "Irrelevant and immaterial."

also testified that Mr. MacMillan did not give her permission to forward emails to Patricia MacMillan.  Docket No. 45 at 4, ¶ 8.

Mrs. MacMillan admits accessing Mr. MacMillan's AOL account and viewing an email from Mr. Bovino dated January 7, 2011, in which Mr. Bovino discusses "concerns over continuing your marriage to your wife, Tina."  Docket No. 45 at 4, ¶ 3.  Mrs. MacMillan also admits accessing Mr. MacMillan's AOL account and viewing an email from Mr. Bovino dated February 2, 2011, in which Mr. Bovino discusses transferring trust assets from UBS to a different institutional trustee.  *Id.* at 4, ¶ 4.  At various times, Mrs. MacMillan would access Mr. MacMillan's AOL account and forward emails and attached documents from Mr. Bovino to her personal AOL account, Patricia MacMillan, and UBS representatives.  *Id.* at 5-6, ¶¶ 10, 13, 16.  Mrs. MacMillan admits to sometimes deleting emails from Mr. MacMillan's email account.  Docket No. 45-2 at 15-16, pp. 27:20-28:6.

On or about February 24, 2011, Mrs. MacMillan created the domain name bovinolaw.net.  Docket No. 45 at 6, ¶ 19.[3]  Mrs. MacMillan sent an email to Mr. MacMillan from a bovinolaw.net email address pretending to be Mr. Bovino and stating that Mr. Bovino had changed his email address to bovinolaw.net.  *Id.* at 6, ¶ 21.  After creating the bovinolaw.net email address, Mrs. MacMillan set up Mr. MacMillan's email account to automatically route actual emails sent by Mr. Bovino from bovinolaw.com into a spam folder.  *Id.* at 6, ¶ 22.  Mrs. MacMillan would review emails diverted to Mr.

---

[3]The emails attached to plaintiffs' brief indicate that the domain name Mrs. MacMillian created was bovinolaw.net, and not, as plaintiffs' brief states, bovino.net. *See, e.g.*, Docket No. 45-20 at 1.

MacMillan's spam folder, copy their contents, and at least once re-sent an email to Mr. MacMillan from the bovinolaw.net address.  *Id.* at 7, ¶ 23.  In one instance, Mrs. MacMillan admits that she altered the contents of Mr. Bovino's email before re-sending it to Mr. MacMillan from the bovinolaw.net address.  *id.* at 7, ¶ 25; *compare* Docket No. 45-15, *with* Docket No. 45-20.

Mrs. MacMillan claims that she monitored her husband's emails out of concern for his mental state and decision-making ability.[4]  Docket No. 45-2 at 12, p. 23:14-20. Mrs. MacMillan testified that she believed Mr. Bovino knew her husband was vulnerable and that it was her intention to cut off communication between her husband and Mr. Bovino.  Docket No. 45-2 at 20, p. 33:10-20.  According to a March 30, 2011 order from the 17th Judicial Circuit in and for Broward County, Florida, Mr. MacMillan was declared incompetent due to mental illness.  Docket No. 65-2.

On May 10, 2011, Mr. Bovino, David A. Bovino P.C., and Mr. MacMillan filed this action against Patricia MacMillan in the District Court for Pitkin County, Colorado. Docket No. 1 at 1.  On January 24, 2012, Mr. MacMillan, through his guardian ad litem, asked to be dismissed as a party.  Docket No. 1-1 at 2-3.  On January 25, 2012, the Court dismissed Mr. MacMillan from the case.  Docket No. 1-2 at 2.  On February 10, 2012, the remaining plaintiffs amended their complaint to add Mrs. MacMillan as a defendant.  Docket No. 1-3 at 2.  On March 1, 2012, Mrs. MacMillan removed the case

---

[4]The "Additional Relevant Facts" set forth in Mrs. MacMillan's response brief fail to comply with the Court's Practice Standards, which require that additional disputed questions of fact be set forth in separate paragraphs and accompanied by a specific reference to material in the record.  *See* Practice Standards (Civil case), Judge Philip A. Brimmer § III.F.3.b.v.  The Court will disregard any of Mrs. MacMillan's factual assertions that do not include a specific reference to the record.

to this Court.  Docket No. 1.  In the Second Amended Complaint, plaintiffs assert nine claims for relief against defendants.  Docket No. 9.  Plaintiffs bring state law claims for invasion of privacy, intentional interference with contractual obligations, intentional interference with prospective business advantage, and civil conspiracy.  *Id.* at 10-13. Plaintiffs bring federal claims under the Anticybersquatting Consumer Protection Act, Lanham Act, Stored Communications Act, and Computer Fraud and Abuse Act.  *Id.* at 12-15.

Plaintiffs move for summary judgment on the issue of Mrs. MacMillan's liability under their eighth claim for relief, which is brought pursuant to the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*  Docket No. 45 at 1.  Plaintiffs argue that Mrs. MacMillan acted in excess of her authorized access to Mr. MacMillan's AOL email account and that Mrs. MacMillan prevented access to emails sent by plaintiffs.  *Id.* at 8.  Mrs. MacMillan responds by arguing that plaintiffs lack standing to bring a claim under the SCA and that Mrs. MacMillan did not exceed her authorized access to Mr. MacMillan's AOL email account.  Docket No. 65 at 8, 16.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party." *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

## III.  ANALYSIS

### A.  Standing Under the Stored Communications Act

Mrs. MacMillan, in response to plaintiffs' motion, raises the issue of plaintiffs' standing to bring a claim under the SCA.  Docket No. 65 at 16.  Specifically, Mrs. MacMillan argues that plaintiffs did not suffer an "injury in fact" and are not aggrieved persons entitled to bring an action under the statute.  *Id.*  Although it is not entirely clear, Mrs. MacMillan also seems to claim that plaintiffs lack standing under Article III of the United States Constitution.  *Id.*  Plaintiffs respond that they have suffered an injury caused by Mrs. MacMillan's alleged unauthorized obtaining, forwarding, and altering of their privileged communications.  Docket No. 66 at 9.

The SCA is violated when a person:

(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or

(2) intentionally exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system . . . .

6

18 U.S.C. § 2701(a).  The SCA provides a right of action for persons "aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind . . . ."  18 U.S.C. § 2707(a).

Under Article III, Section 2 of the United States Constitution, the judicial power of federal courts extends only to "Cases" or "Controversies."  *Carolina Cas. Ins. Co. v. Pinnacol Assurance*, 425 F.3d 921, 926 (10th Cir. 2005).  Thus, in order to establish "constitutional standing," the plaintiff must show that:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  Constitutional standing is jurisdictional and "may be raised at any stage of the proceeding."  *Carolina Cas.*, 425 F.3d at 926.[5]

On the issue of whether they are "persons aggrieved" under the SCA, plaintiffs claim that "[b]y admitting that she forwarded e-mails between Mr. Bovino and his client to the very individuals or entities about which the client sought legal advice, Defendant herself establishes the basis for Plaintiffs' grievance."  Docket No. 66 at 8.  Plaintiffs go on to state to that "Plaintiffs, as a lawyer and law firm, therefore have Article III standing to protect the unauthorized obtaining, forwarding, altering and restricting of access to, attorney-client privileged emails sent to their client."  *Id*. at 9.

---

[5]Ordinarily, when the issue of standing is raised by a summary judgment motion, the plaintiff cannot rest solely on the complaint's allegations, but must show injury in fact through affidavits or other evidence that tends to establish specific facts.  *Id.* at 927.

Plaintiffs correctly note that, in determining their standing under Article III, the Court should not confuse standing with the merits. *See Initiative and Referendum Institute v. Walker*, 450 F.3d 1082, 1092 (10th Cir. 2006).  As the Tenth Circuit later observed in *Day v. Bond*, 500 F.3d 1127, 1137 (10th Cir. 2007), "[p]ractically speaking, *Walker* mandates that we assume, during the evaluation of the plaintiff's standing, that the plaintiff will prevail on his merits argument – that is, that the defendant has violated the law."  Based upon the undisputed fact that plaintiffs were parties to the communications viewed by Mrs. MacMillan, that Mrs. MacMillan admits that she had no authorization to forward emails to third parties, and that plaintiffs provide some factual support that Mrs. MacMillan used her access to Mr. MacMillan's email account to divert emails plaintiffs sent to Mr. MacMillan into a spam folder before Mr. MacMillan could view them, the Court finds that plaintiffs have shown injury in fact sufficient to satisfy their standing under Article III.

### B.  Mrs. MacMillan's Liability Under the Stored Communications Act

Plaintiffs argue that Mrs. MacMillan violated the SCA by forwarding, copying, printing, preventing access to, and altering emails Mr. Bovino sent to Mr. MacMillan's AOL email account.  Docket No. 45 at 11-13.  Mrs. MacMillan does not dispute that Mr. MacMillan's AOL email account and email messages were "in storage" at a "facility through which an electronic communication service is provided" under 18 U.S.C. § 2701(a).  Docket No. 65 at 8-9.  Rather, Mrs. MacMillan argues that Mr. MacMillan authorized her access to his AOL email account.  *Id.*

The SCA was enacted, in part, "to protect privacy interests in personal and

proprietary information and to address the growing problem of unauthorized persons deliberately gaining access to . . . [private] electronic or wire communications." *Gen. Bd. of Global Ministries of the United Methodist Church v. Cablevision Lightpath, Inc.*, 2006 WL 3479332, at *3 (E.D.N.Y. Nov. 30, 2006).  Under the SCA, a person is not liable for conduct that is "authorized . . . by a user of that service with respect to a communication of or intended for that user."  18 U.S.C. § 2701(c)(2).  The existence and scope of authorization is generally a highly factual inquiry.  *Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 636 (E.D. Va. 2009).  Authorized access, in the electronic context, typically involves consideration of "the expected norms of intended use or the nature of the relationship established" between the holder of the communications and the authorized party.  *U.S. v. Phillips*, 477 F.3d 215, 219 (5th Cir. 2007) (analyzing authorization under the Computer Fraud and Abuse Act ("CFAA")); *see also EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 581-84 (1st Cir. 2001) (upholding preliminary injunction based, in part, upon "voluminous documentary evidence" that defendant likely violated the CFAA); *U.S. v. Morris*, 928 F.2d 504, 510 (2d Cir. 1991) (affirming jury finding that defendant's conduct constituted access without authorization in violation of the CFAA).  For example, in *Yessin*, a husband and wife separated and started divorce proceedings while serving as general partners in the same business.  686 F. Supp. 2d at 634.  The husband allegedly accessed his wife's business email account, viewing and intercepting communications between his wife and his wife's attorney concerning divorce proceedings.  *Id.*  The husband argued that he was not liable under the SCA because, as a general partner, he was authorized to

access business email accounts. *Id.* at 636.  In denying the husband's motion to dismiss, the court found that the factual allegations created an inference that the husband lacked a legitimate business reason to access his wife's business email account such that he was not acting as an agent of the business. *Id.* at 636-37; *see also Penrose Computer Marketgroup, Inc. v. Camin*, 682 F. Supp. 2d 202, 210 (N.D.N.Y. 2010) (finding that defendant's ability to access plaintiff's computer system "does not support the conclusion that Defendant had authorization to access another employee's email account").

Although the Tenth Circuit has not addressed the boundaries of authorized access under the SCA, other jurisdictions interpret the SCA with reference to the common law doctrine of trespass. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1072-73 (9th Cir. 2004) ("Just as trespass protects those who rent space from a commercial storage facility to hold sensitive documents, the Act protects users whose electronic communications are in electronic storage"); *Cablevision Lightpath*, 2006 WL 3479332, at *3 ("Computer hackers are defined as electronic trespassers.").  Thus, courts hold that "[p]ermission to access a stored communication" is not necessarily valid authorization if permission "would not defeat a trespass claim in analogous circumstances." *Theofel*, 359 F.3d at 1073.  The SCA additionally requires plaintiff to prove that the conduct or result was the defendant's conscious objective. *Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 976 (M.D. Tenn. 2008).

The Court first turns to the issue of authorization.  For the purposes of their motion, plaintiffs admit that Mrs. MacMillan had permission to access Mr. MacMillan's

email account.  Docket No. 45 at 10 n.2.  Thus, Mrs. MacMillan's viewing of Mr.

Bovino's emails, whether or not they were marked "attorney-client privilege," did not

"exceed[] an authorization" under § 2701(a)(2).[6]

Plaintiffs instead argue that Mrs. MacMillan exceeded the scope of her

authorization by forwarding, copying, printing, deleting, diverting, and altering Mr.

MacMillan's emails.  Docket No. 45 at 11-13.  Specifically, plaintiffs argue that Mrs.

MacMillan knew she was "not authorized to forward e-mails, yet she intentionally

forwarded e-mails to herself and intentionally printed e-mails, thus 'obtaining' them.'"

Docket No. 66 at 6.  Plaintiffs make similar arguments that Mrs. MacMillan altered Mr.

MacMillan's emails.  *Id.*  The SCA prohibits conduct whereby a person, without

authorization, "obtains, alters, or prevents authorized access."  18 U.S.C. § 2701(a).

The SCA does not prohibit obtaining or altering emails without authorization, but

obtaining or altering *access* without authorization.  *See Sherman & Co. v. Salton Maxim

Housewares, Inc.*, 94 F. Supp. 2d 817, 820 (E.D. Mich. 2000).  Thus, the SCA prohibits

unauthorized access, not "the *disclosure or use* of information gained without

authorization."  *Id.* (emphasis in original); *accord Wesley College v. Pitts*, 974 F. Supp.

---

[6]Mr. MacMillian, the holder of any attorney-client privilege associated with plaintiffs' emails, is no longer a party to this case and plaintiffs cannot invoke Mr. MacMillan's attorney-client privilege for their own benefit.  *See Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir. 1967) (holding that attorney-client privilege belongs to the client and an attorney cannot "invoke the privilege for his own benefit when his client desires to waive it"); *Shriver v. Baskin-Robbins Ice Cream Co., Inc.*, 145 F.R.D. 112, 115 (D. Colo. 1992) ("Colorado courts have clearly recognized that the attorney-client privilege is personal to the client and . . . the key inquiry in dealing with claims of waiver is whether the client, as the privilege holder, has expressly or impliedly forsaken a claim of confidentiality with respect to the information in question.")

375, 389 (D. Del. 1997) ("a person who does not provide an electronic communication service . . . can disclose or use with impunity the contents of an electronic communication"); *Penrose Computer Marketgroup, Inc. v. Camin*, 682 F. Supp. 2d 202, 211 (N.D.N.Y. 2010) ("[S]ection 2701 outlaws illegal entry, not larceny" (internal quotation marks omitted)).  The SCA is therefore violated when "the trespasser gains access to information to which he is not entitled to see, not [when] the trespasser uses the information in an unauthorized way." *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 497 (D. Md. 2005) (internal quotation marks omitted).[7]  As a matter of law, Mrs. MacMillan did not exceed the scope of her authorized access by forwarding or printing emails from Mr. MacMillan's AOL account.

Plaintiffs also argue that Mrs. MacMillan prevented access without authorization by routing Mr. Bovino's emails to Mr. MacMillan's spam folder and intentionally deleting certain emails.  Docket No. 66 at 6.  Mrs. MacMillan argues that plaintiffs fail to produce

---

[7]Plaintiffs cite *Amedisys Holding, LLC v. Interim Healthcare of Atlanta, Inc.*, 793 F. Supp. 2d 1302, 1315-16 (N.D. Ga. 2011), in support of their argument that forwarding emails constitutes a violation of the SCA.  However, in *Amedisys Holding*, the plaintiff sought a preliminary injunction for misappropriation of trade secrets, breach of contract, and violation of the SCA and CFAA.  *Id.*  Although the court concluded that a former employee "likely violated the SCA by downloading, copying, or transferring to her personal email account *trade-secret material*," the court granted plaintiff a preliminary injunction without deciding the merits of plaintiff's SCA claim.  *Id.* (emphasis added).  Plaintiffs' citation to *Samples v. Rainsberger*, 2007 WL 4208310, at *1 (D. Or. Nov. 28, 2007), also fails to support their argument.  Plaintiffs correctly point out that the defendant in *Samples* admitted to forwarding emails and photos; however, the court did not decide whether an SCA claim could be based upon defendant's admission.  *Id.*  Rather, the court denied summary judgment, holding that issues of fact existed as to the scope of defendant's authority to access plaintiff's email account.  *Id.*; *see also Monson v. Whitby Sch., Inc.*, 2010 WL 3023873, at *5 (D. Conn. Aug. 2, 2010) (denying motion to dismiss upon finding that employer sufficiently pled that former employee exceeded the scope of her authorized access).

any evidence that her actions actually prevented or restricted Mr. MacMillan's access to Mr. Bovino's emails. Docket No. 65 at 15. Through her opposition to the summary judgment motion, Mrs. MacMillan admits paragraph 22 of the statement of undisputed facts, namely, that "she altered Mr. MacMillan's e-mail account such that Bovino Law e-mails would go into Mr. MacMillan's spam folder." Docket No. 45 at 6, ¶ 22; Docket No. 65 at 4, ¶¶ 19-23. However, Mrs. MacMillan's testimony on this subject contains numerous contradictions, as paragraph 22 itself reflects. *See, e.g.*, Docket No. 45 at 6, ¶ 22 ("Any emails that were forwarded to bovino.net they would go into the spam folder."). As a result, her apparent admission that all of plaintiffs' emails would be diverted to a spam folder is actually an admission of the contradicting statements she made in her deposition. Initially Mrs. MacMillan testified that "I had Mr. Bovino's email so they would go into Andrew's spam and if I felt like they were appropriate, then I would copy them into the bovino.net and send it through and that was only one e-mail where that happened." Docket No. 45-2 at 21, p. 34:15-19. She testified that only one or two emails ever went into the spam folder. *Id.* at 24, p. 40:17-20. Mrs. MacMillan then explained "the emails that *came from* the bovino.net account. Those were the e-mails that went into the spam folder. Those were the only e-mails that went into the spam folder . . . . Any e-mails that were forwarded to bovinolaw.net they would go into the spam folder." Docket No. 45-2 at 25, p. 41:13-16 (emphasis added); *id.* at 26, p. 42:21-22. She also stated, "I know that there were one or two e-mails that went into the spam folder that went to bovino.net account." *Id.* at 29-30, pp. 52:25-53:2. It is unclear whether Mrs. MacMillan simply forwarded emails sent by Mr. Bovino to her bovinolaw.net account, which is not a violation of the SCA, or whether, on one or two

13

occasions, Mrs. MacMillan diverted to Mr. MacMillan's spam folder emails sent by Mr.

Bovino.  Because a genuine dispute exists as to whether Mrs. MacMillan exceeded her

authorization by preventing Mr. MacMillan's access to Mr. Bovino's email, plaintiffs are

not entitled to summary judgment on this issue.  *See Seamons v. Snow*, 206 F.3d

1021, 1026 (10th Cir. 2000) (holding that court may not resolve credibility issues in

deciding a motion for summary judgment).

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion for Summary Judgment [Docket No. 45] is

**DENIED**.

DATED March 20, 2014.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge